IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LINDA LOU JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | 7:06CV5020 |
| | ) | |
| v. | ) | |
| | ) | |
| SOCIAL SECURITY ADMINISTRATION, | ) | MEMORANDUM AND ORDER ON |
| Linda S. McMahon, Acting Commissioner | ) | REVIEW OF THE FINAL DECISION OF |
| of Social Security, | ) | THE COMMISSIONER OF THE SOCIAL |
| | ) | SECURITY ADMINISTRATION |
| Defendant. | ) | |
| | ) | |

Now before me is Plaintiff Linda Lou Johnson's complaint, filing 1, which is brought pursuant to 42 U.S.C. § 1383(c)(3). The plaintiff seeks a review of the Commissioner of the Social Security Administration's decision to deny the plaintiff's application for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq. (See generally Compl., filing 1.)[1] The defendant has filed an answer to the complaint and a transcript of the administrative record. (See filings 10, 11.) In addition, the parties have filed briefs in support of their respective positions. (See Pl.'s Br., filing 13; Def.'s Br., filing 16; Pl.'s Reply Br., filing 17.) I have carefully reviewed these materials, and I find that the Commissioner's decision must be affirmed.

**I. BACKGROUND**

The plaintiff filed an application for Supplemental Security Income (SSI) benefits on July 31, 2002. (See Transcript of Social Security Proceedings, filing 11 (hereinafter "Tr."), at 112-114.) Her application was denied on initial review, (see Tr. at 27, 33-36), and it appears that the

---

[1]Although the complaint alleges that the plaintiff also seeks to appeal the Commissioner's decision denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., (see Compl., filing 1, ¶ 1; see also Pl.'s Br., filing 13, at 3), no application for disability insurance benefits appears in the record.

1

plaintiff did not appeal the denial.

On January 20, 2004, the plaintiff filed a second application for SSI benefits. (See Tr. at 115-18.) She claimed that she became unable to work on January 18, 2004, due to lymphedema,[2] a bacterial infection, lower back pain, "bad" ankles, and difficulty raising her arm over her head. (See id. at 115, 180-81.) After the plaintiff's application was denied initially, (see id. at 29-30, 37-40), and on reconsideration, (see id. at 31-32, 41-46), the plaintiff requested a hearing before an Administrative Law Judge (ALJ), (see id. at 47-48). This hearing was held on October 19, 2005, (see id. at 417), and, in a decision dated February 10, 2006, the ALJ concluded that the plaintiff was not entitled to SSI benefits, (see id. at 11-25). In reaching this conclusion, the ALJ made the following findings:

1.  At times pertinent to this inquiry, the claimant has not performed substantial and gainful work activity as defined in the Regulations.

2.  The record establishes that the claimant has the following medically determinable impairments which have imposed more than slight limitations upon her ability to function: status post bilateral mastectomies with residual left upper extremity lymphedema, degenerative lumbar disc disease, and degenerative joint disease of the right knee.

3.  Her medically determinable impairments, either singly or collectively, have not revealed the same or equivalent attendant medical findings as are recited in Appendix 1 to Subpart P of the Social Security Administration's Regulations No. 4; however, they have imposed some limitations upon her ability to perform basic work-related functions, as noted earlier in this decision.

4.  In view of such limitations, the claimant has been unable to perform her past relevant work as a general clerk, general cleaner, laundry worker, waitress or food assembler.

5.  Notwithstanding the limitations resulting from her medically determinable impairments, the claimant possesses the residual functional capacity for other work which exists in the regional and national economies in significant numbers.

---

[2]Lymphedema is a "[s]welling (especially in subcutaneous tissues) as a result of obstruction of lymphatic vessels or lymph nodes and the accumulation of large amounts of lymph in the affected region." Stedman's Medical Dictionary 1040 (27th ed. 2000).

      6.      The claimant's testimony, with respect to any allegation of total disability, was not credible in view of the criteria set forth under 20 CFR 416.929, Social Security Ruling 96-7p, and <u>Polaski v. Heckler</u>, supra.

      7.      The claimant is not disabled, as that term is defined under the Social Security Act, as amended.

      8.      The claimant is not eligible for the payment of supplemental security income benefits under Title XVI of the Social Security Act, as amended.

(Tr. at 24-25.)

      The plaintiff requested that the Appeals Council of the Social Security Administration review the ALJ's decision. (<u>See</u> Tr. at 9-10.) This request was denied by letter dated June 29, 2006, (<u>see id.</u> at 6-8), and, therefore, the ALJ's decision stands as the final decision of the Commissioner of Social Security.

      On August 25, 2006, the plaintiff filed the instant action. (<u>See</u> Compl., filing 1.) The plaintiff seeks a determination that the Commissioner's decision is erroneous and an award of benefits. (<u>See id.</u> at 2.)

## II.   STANDARD OF REVIEW

      I must review the Commissioner's decision to determine "whether there is substantial evidence based on the entire record to support the ALJ's factual findings." <u>Johnson v. Chater</u>, 108 F.3d 178, 179 (8th Cir. 1997) (quoting <u>Clark v. Chater</u>, 75 F.3d 414, 416 (8th Cir. 1996)). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion." <u>Estes v. Barnhart</u>, 275 F.3d 722, 724 (8th Cir. 2002) (quoting <u>Johnson v. Apfel</u>, 240 F.3d 1145, 1147 (8th Cir. 2001)); <u>see also</u> <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The decision should not be reversed "merely because substantial evidence would have supported an opposite conclusion." <u>Harris v. Shalala</u>, 45 F.3d 1190, 1193 (8th Cir. 1995) (citation omitted). However, the court's review is not simply "a rubber stamp for the [Commissioner's] decision and involves more than a search for evidence supporting the [Commissioner's] findings." <u>Tome v. Schweiker</u>, 724 F.2d 711, 713 (8th Cir. 1984). <u>See also</u> <u>Warburton v. Apfel</u>, 188 F.3d 1047, 1050 (8th Cir. 1999) ("To determine whether existing

evidence is substantial, 'we must consider evidence that detracts from the [Commissioner's] decision as well as evidence that supports it.'" (quoting Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993))).

I must also determine whether the Commissioner applied the proper legal standards to arrive at his decision. See Lowe v. Apfel, 226 F.3d 969, 971 (8th Cir. 2000); Johnson v. Chater, 108 F.3d 178, 179 (8th Cir. 1997); Nettles v. Schweiker, 714 F.2d 833, 835-36 (8th Cir. 1983). No deference is owed to the Commissioner's legal conclusions. See Brueggemann v. Barnhart, 348 F.3d 689, 692 (8th Cir. 2003).

An ALJ is required to follow a five-step sequential analysis to determine whether an individual claimant is disabled. See 20 C.F.R. § 416.920(a). The ALJ continues the analysis until the claimant is found to be "not disabled" at steps one, two, four or five, or is found to be "disabled" at step three or step five. See id. Step one requires the ALJ to determine whether the claimant is currently engaged in any substantial gainful activity. See id. § 416.920(a)(4)(i), (b). If the claimant is engaged in substantial gainful activity, the ALJ will find that the claimant is not disabled. See id. Step two requires the ALJ to determine whether the claimant has an impairment or a combination of impairments that significantly limits her ability to do "basic work activities" and satisfies the "duration requirement." See id. § 416.920(a)(4)(ii), (c); id. § 416.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."). Basic work activities include, inter alia, "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[u]nderstanding, carrying out, and remembering simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to supervision, co-workers and usual work situations," and "[d]ealing with changes in a routine work setting." Id. § 416.921(b). If the claimant cannot prove such an impairment, the ALJ will find that the claimant is not disabled. See id. § 416.920(a)(4)(ii), (c). Step three requires the ALJ to compare the claimant's impairment or combination of impairments to a list of impairments. See id. § 416.920(a)(4)(iii). If the claimant has an impairment "that meets or equals one of [the] listings," the analysis ends and the claimant is found to be "disabled." Id. If a claimant does not suffer from a listed impairment or its equivalent, then the analysis proceeds to steps four and five. See id. §

416.920(a). Step four requires the ALJ to consider the claimant's residual functional capacity[3] to determine whether the impairment or impairments prevent the claimant from engaging in "past relevant work." See id. § 416.920(a)(4)(iv), (e), (f). If the claimant is able to perform any past relevant work, the ALJ will find that the claimant is not disabled. See id. § 416.920(a)(4)(iv), (f). Step five requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can do work other than that which the claimant has done in the past. See id. § 416.920(a)(4)(v). If the ALJ determines that the claimant cannot do such work, the claimant will be found to be "disabled" at step five. See id. § 416.920(a)(4)(v).

"In order to qualify for disability benefits, a claimant bears the burden of proving that he or she is unable to engage in any substantial gainful activity because of a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death." Nettles v. Schweiker, 714 F.2d 833, 836 (8th Cir. 1983). However, at step five of the sequential analysis described above, the burden shifts to the Commissioner to establish that the claimant has the residual functional capacity to do "some job that exists in the national economy." Id. See also Clark v. Shalala, 28 F.3d 828, 830 (8th Cir. 1994).

In this case, the ALJ reached step five of the sequential analysis and concluded that the plaintiff was not disabled. (See Tr. at 25 ¶¶ 5-7.)

### III.   SUMMARY OF THE PLAINTIFF'S MEDICAL HISTORY

The plaintiff was born on February 9, 1947, and she has two years of college education. (See Tr. at 115, 184, 426.) She has a history of breast cancer, and she underwent a left breast mastectomy in 1994 and a right breast mastectomy in 2000. (See id. at 304, 312, 319.) The mastectomies have caused chronic lymphedema in the plaintiff's left upper extremity, along with

---

[3] "'Residual functional capacity' is what the claimant is able to do despite limitations caused by all of the claimant's impairments." Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000) (citing 20 C.F.R. § 404.1545(a)). See also 20 C.F.R. § 416.945(a).

recurring episodes of cellulitis.[4]  (See id. at 315.)  The medical records describing the treatment that the plaintiff received for these and other health problems will be summarized below. Because the plaintiff claims that the ALJ failed to consider the plaintiff's physical impairments that existed prior to the alleged onset date of January 18, 2004, (see Pl.'s Br., filing 13, at 4), this summary will encompass the oldest medical documents appearing in the record.

On September 12, 2001, the plaintiff was seen by Dr. Patrick Judson at the Great Plains Regional Medical Center (Great Plains) for a follow-up exam.  (See Tr. at 299-300.)  Dr. Judson noted that there was "no evidence of local recurrence of her breast cancer," "[s]he has had no recurrence of her cellulitis of her arm," and she "is doing relatively well."  (Id. at 299.)  His report also states,

> My impression would be that she wants to have disability papers filled out again, and I explained . . . to her again and to her niece . . . that oncologically Mrs. Johnson is not disabled and actually she has nothing that I know if that would physically disable her from working.  There are some issues of failure to cope and failure to take care of herself and perhaps she might want to see a psychiatrist . . . . I explained to her that she is not disabled that I can tell.  She does need to have treatment for her hypertension.

(Id. at 299-300.)  During a follow-up visit on October 10, 2001, Dr. Judson noted that the plaintiff was "doing better with her hypertension although she needs to be more compliant with her medications."  (Id. at 298.)

On October 12, 2001, the plaintiff was admitted to the emergency room at Great Plains after she experienced "very limited exposure to chlorine gas fumes," which caused her to suffer an "irritated throat and a slight cough."  (Tr. at 292.)   The plaintiff "was stable upon discharge with no real significant abnormalities noted."  (Id. at 293.)

On January 18, 2002, the plaintiff returned to Great Plains for a follow-up examination regarding her hypertension.  (See Tr. at 295-96.)  Dr. Leanna Scott-Timperley noted that the plaintiff was "a bit hypertensive yet" and that financial concerns were preventing the plaintiff from complying fully with her medication regimen.  (Id.)   Although there were no signs of recurrence of the plaintiff's breast cancer, the plaintiff "continue[d] to have lymphedema in the

---

[4]Cellulitis is "[i]nflammation of the subcutaneous, loose connective tissue."  Stedman's Medical Dictionary 317 (27th ed. 2000).

6

right upper extremity." (Id. at 295.) The plaintiff reported that "her primary complaint is of left knee pain," and she has problems when she climbs stairs. (Id.) It appears, however, that the plaintiff did not receive any treatment for her knee pain. (See id. at 296.)

A note dictated by Dr. Addison Tolentino indicates that the plaintiff appeared on February 11, 2002, "with a complaint of increasing erythema in the left upper extremity and pain and tenderness."[5] (Tr. at 294.) On February 15, 2002, after five days of medication, the plaintiff was "much better." (Id.) More specifically, there was "less erythema, no more pain, and she [could] sleep better." (Id.)

On March 15, 2002, the plaintiff received treatment at the Great Plains emergency room for smoke inhalation. (Tr. at 278-82.) Records indicate that she was exposed to smoke for less than five minutes after a dryer caught fire, and she was treated and discharged home. (See id.)

On March 18, 2002, the plaintiff returned to the Great Plains emergency room after she was "involved in a slow moving motor vehicle accident" as "an unrestrained rear passenger." (Tr. at 287.) The plaintiff complained of lower back pain, which improved with medication. (See id.) She was "discharged home with diagnosis musculoskeletal back pain," and she was instructed to follow-up with her doctor or, if necessary, the emergency room. (See id. at 288.)

On September 13, 2002, Dr. Leland Lamberty performed a "Disability Determinations Physical" examination of the plaintiff. (See Tr. at 274-75.) Dr. Lamberty observed that the plaintiff's "primary complaint" was "joint pain, especially involving the low back, the left knee, and both ankles." (Id. at 274.) After completing his examination, he determined that the plaintiff suffered from "Chronic low back pain, most likely secondary to severe degenerative disc disease L5-S1," "Exogenous obesity," "Chronic left knee pain," "Bilateral ankle pain," and "Lymphedema, left upper extremity," and he noted that she had "bilateral mastectomies for CA of the breast." (Id. at 275.) His report concludes,

> This ladies [sic] primary problems [sic] certainly appears to be her degenerative disc disease in the low back. Her bilateral ankle pain and her left knee pain coupled with her obesity simply adds significantly to the mix making it very difficult for her to do anything requiring walking, climbing, prolonged

---

[5]Erythema is "[r]edness due to capillary dilation." Stedman's Medical Dictionary 615 (27th ed. 2000).

7

>standing, walking, bending. With no real attempt at exercise and medication for treatment, there is no way to know how much she might improve, but her activity at this point would certainly seem to be limited, as mentioned above.

(Id.)

The plaintiff sought treatment at Great Plains on November 7, 2003, several days after she suffered a fall. (See Tr. at 304-05.) Notes dictated by Dr. Michael Lynch state that the plaintiff had "an area of cellulitis extending from the lateral border of the scapula over the anterior chest to the midline and down to the level of the mastectomy incision on the left side." (Id. at 304.) The notes also state that "[t]here is swelling and erythema also on the left upper extremity and chronic lymphedema [on the] left upper extremity." (Id.) The plaintiff was directed to take medication and return for a follow-up exam in ten days. (See id. at 304-05.) The plaintiff appeared for her follow-up examination on November 19, 2003, and her cellulitis was noted to be "resolving." (Tr. at 301.) She returned for another follow-up on January 21, 2004, and she was found to be "doing well." (Id. at 302.) More specifically, the record states that her cellulitis had resolved, but she still had "quite significant" lymphedema in her left upper extremity. (Id.; see also id. at 401 (indicating that a follow-up examination on May 25, 2004, revealed lymphedema, but there was "no evidence of erythema or tenderness").)

On April 6, 2004, the plaintiff reported right shoulder pain to Dr. David Fabian. (See Tr. at 308.) According to Dr. Fabian's notes, the plaintiff began to experience pain in her shoulder after she attempted to lift a vacuum cleaner in October. (See id.) The pain became worse over time, and she was unable to lift her arm over her head during her consultation with Dr. Fabian. (See id.) Dr. Fabian concluded that the plaintiff was suffering from a "fairly significant rotator cuff tear," and he advised the plaintiff that "almost certainly she is going to need surgery for this." (Id.) However, the plaintiff informed Dr. Fabian that she was "unable to go forward with anything specific at this point" due to her lack of insurance. (Id.)

The plaintiff visited Dr. Fabian again on October 15, 2004. (See Tr. at 310.) Dr. Fabian noted that the plaintiff had not had an MRI, and she had not received any treatment for her shoulder. (See id.) He also noted that "[a]t this point, she has FROM and while she's mildly

8

tender about the shoulder, she really has good function, negative sulcus sign."[6] (Id.) In addition, Dr. Fabian's record states,

> She is here for me to fill out a disability form. . . .
>
> . . . .
>
> At this point, I really cannot answer the question of disability as I still don't have a working diagnosis and I think that she would benefit from some Physical Therapy. I will be happy to further evaluate her and treat her, but we need additional information.

(Id.)

The plaintiff was hospitalized at Great Plains from January 2, 2005, through January 6, 2005, to receive treatment for cellulitis in her left arm. (See Tr. at 311-27, 352-400.) The cellulitis caused the plaintiff to suffer redness, swelling, and pain. (See id. at 311.) A note dictated by Dr. Kent Allison states that the plaintiff "did quite well just with IV antibiotics and compression of the arm." (Id.) The note continues, "Over the course of four days, she had a steady improvement and was discharged home in good condition." (Id.)

An unsigned note[7] dated January 13, 2005, states,

> Recheck cellulitis of the left arm as well as lymphedema of the left arm secondary to her bilateral mastectomies. Continues to have edema although it is decreased. The erythema of the arm is significantly better. She was having me fill out some paperwork for disabilities secondary to the arm but I don't believe that this will get her a disability. I recommended that she have follow-up on her back, her knees and her ankles, which according to her were bad before she every [sic] checks into it.

(Id. at 328.)

The plaintiff received occupational therapy for her lyphedema from approximately January 10, 2005, through approximately February 24, 2005. (See id. at 333-42.) She was discharged from occupational therapy on March 14, 2005, and was described as "[i]ndependent with home program." (Id. at 333.)

---

[6]According to the ALJ, "FROM" means "full range of motion." (See Tr. at 17.)

[7]The note bears initials matching those of Dr. Kent Allison.

9

An unsigned note[8] dated September 20, 2005, states that the plaintiff "had right knee pain since the end of July," though she reported "[n]o specific injury." (Tr. at 416.) The plaintiff had been walking with a limp, and there was evidence of "some mild arthritis." (Id.) She was prescribed anti-inflammatory medication as an initial treatment, with "an injection or orthopedic referral" to follow if necessary. (Id.)

## IV. ANALYSIS

The plaintiff submits that four specific issues require reversal of the ALJ's decision. (See Pl.'s Br., filing 13, at 4.) I shall consider each of these issues in turn.

### A. Whether the ALJ Failed to Consider the Plaintiff's Status as an "Older Worker" in Combination with Her Physical Limitations

The plaintiff argues first that the Commissioner's decision must be reversed due to the "[f]ailure of the Administrative Law Judge to consider claimant's status as an 'older worker' in conjunction with the claimant's physical limitations." (Pl.'s Br., filing 13, at 4.) I disagree.

Preliminarily, I note that it cannot be said that the ALJ failed to take the plaintiff's age and physical limitations into consideration when reaching her decision. On the contrary, the ALJ's hypothetical question to the vocational expert (VE) incorporated the plaintiff's age and residual functional capacity, (see id. at 452-53), and the ALJ questioned the VE at length about the transferability of the plaintiff's skills, (see id. at 454-56). See also 20 C.F.R. § 416.968(d)(4). Nevertheless, the plaintiff claims that the VE's testimony "does not constitute substantial evidence" because "[t]he concern about the employers hiring an apparently aged and handicapped worker detracts from the VE's certitude that she has employable skills." (Pl.'s Br., filing 13, at 7.) The plaintiff's argument is based upon the following portion of her hearing testimony:

Q   [By ALJ] Okay. Now in your testimony today we've gone through your past work and we've talked about various jobs. And some of the jobs, not all the jobs you've told me that you think you could do now if they existed,

---

[8]The record bears the initials JB, and I note that the ALJ attributes the record to a Dr. Janet Bernard. (See Tr. at 18.)

        is that true?

A    [By plaintiff] Yes.

Q    Okay now the question I want to ask you about those jobs is when I ask you whether you can do the job, I'm not just asking whether you could do it for one day, I'm asking whether you could do it every day of the week all month long month after month.  Could you do that?

A    Probably most of them.

Q    Okay.

A    As long as they didn't involve a lot of lifting.

Q    Okay.  So then my question to you is, why are you coming before me to ask for disability if you think you're capable of doing some of your past jobs?

A    Because I've had a hard time getting employment.  This last time I was over almost a year and a half before I was able to find a job.  People just do not want to hire me because of my age and probably when they look at my arm.

(Tr. at 438-39; see also Pl.'s Br., filing 13, at 4-5.)  I take it that the crux of the plaintiff's argument is that the Commissioner's decision did not properly account for the plaintiff's testimony that prospective employers are unlikely to hire her due to her age and the appearance of her arm.  The question presented by the plaintiff's claim for benefits, however, is whether she is disabled–that is, whether the plaintiff is capable of performing work that exists in the economy–not whether prospective employers would hire her.  See 20 C.F.R. § 416.966(c); Cronkhite v. Sullivan, 935 F.2d 133, 134-35 (8th Cir. 1991) (per curium) (citing, inter alia, Glassman v. Sullivan, 901 F.2d 1472, 1474 (8th Cir. 1990)).  After the ALJ determined that the plaintiff retained the residual functional capacity and vocational abilities to perform work, it would have been improper for her to find that the plaintiff was disabled due to her inability to obtain employment.  See 20 C.F.R. § 416.966(c).

       Citing Eback v. Chater, 94 F.3d 410 (8th Cir. 1996), the plaintiff argues that there is no work in the economy that she can perform unless prospective employers are willing to grant her

"special accommodations." (See Pl.'s Reply Br., filing 17, at 4.) In Eback, the claimant was required to use a nebulizer once between the hours of 7:00 and 8:00 a.m., again between the hours of 2:00 and 3:00 p.m., and twice more during the evening. 94 F.3d at 411-12. It was undisputed that "[s]uch use would be necessary if she were to be able to perform all the duties of the jobs listed by the ALJ 'day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.'" Id. at 412 (citation omitted). The VE testified that the claimant was capable of performing jobs in the national economy, but this testimony was based upon an assumption that employers would grant the claimant a "reasonable accommodation" within the meaning of the Americans with Disabilities Act and allow her to use the nebulizer when necessary. Id. The Eighth Circuit reversed the Commissioner's decision that the claimant was not disabled, explaining that "a determination of relevant jobs existing in the national economy in significant numbers" cannot be based upon "an assumption that the employer would be willing to make accommodations under the ADA." Id.

Eback is distinguishable from the case now before me. In the instant case, there is no evidence that the ALJ's decision was based upon an assumption that the plaintiff would be granted reasonable accommodations by prospective employers. Indeed, the plaintiff has not identified an accommodation that she would require in order to perform the sedentary work identified by the VE.

I find that the ALJ gave proper consideration to the plaintiff's age, appearance, and physical limitations, and I must therefore reject the first argument advanced by the plaintiff in support of her appeal.

**B.   Whether the ALJ Failed to Consider the Plaintiff's Physical Impairments that Existed Prior to the Alleged Onset Date**

The plaintiff argues next that the ALJ failed "to consider the physical impairments of the Plaintiff . . . existing prior to onset date and continuing after the onset date." (Pl.'s Br., filing 13, at 4.)

The general assertion that the ALJ did not consider physical impairments that arose prior to the alleged onset date is factually incorrect. The alleged onset date is January 18, 2004, (see

Tr. at 115), and the ALJ not only considered evidence dating to September 2001, but found that the plaintiff suffered from "medically determinable impairments" that predated the onset date, including lymphedema and degenerative disc disease, (see id. Tr. at 15-18).

The plaintiff argues that the ALJ should have adopted the impressions of Dr. Lamberty, who performed a disability determination examination of the plaintiff on September 13, 2002, in connection with her prior application for benefits.[9] (See Pl.'s Br., filing 13, at 7-8.) The plaintiff concedes, however, that Dr. Lamberty's "examination was for the Plaintiff's prior Social Security application, which was denied and . . . not appeal[ed]." (Id. at 8.) In addition, I note that with the exception of "[e]xogenous obesity" and "[b]ilateral ankle pain," the "medically determinable impairments" identified by the ALJ at step two of the sequential analysis are consistent with Dr. Lamberty's impressions in September 2002. (Compare Tr. at 18, 24 ("status post bilateral mastectomies with residual left upper extremity lymphedema, degenerative lumbar disc disease, and degenerative joint disease of the right knee") with id. at 275 ("1. Chronic low back pain, most likely secondary to severe degenerative disc disease L5-S1.  2. Exogenous obesity.  3. Chronic left knee pain.  4. Bilateral ankle pain.  5. Lymphedema, left upper extremity.  6. Status post bilateral mastectomies for CA of the breast.").)

The ALJ's determination of the plaintiff's impairments at step two of the sequential analysis is supported by substantial evidence, and I am not persuaded that the ALJ failed to consider properly evidence predating the alleged onset date.

### C. Whether the Conflict Between the Medical Expert's Opinion and the Diagnoses of the Plaintiff's Treating Physicians Merits Reversal of the Commissioner's Decision

Dr. Selbert Chernoff provided expert medical testimony during the hearing of October 19,

---

[9]The ALJ did discuss Dr. Lamberty's impressions in her decision. (See Tr. at 16.) Parenthetically, I note that the plaintiff argues in her reply brief that the ALJ should not have considered Dr. Judson's opinion that the plaintiff "is not disabled and . . . has nothing that I know of that would disable her from working," because his opinion is "dated almost two years before the alleged onset date [and] is simply irrelevant to the current case due to the fact that it does not consider subsequent medical problems." (Pl.'s Reply Br., filing 17, at 2.) The tension between this argument and the plaintiff's claim that the ALJ should have adopted the impressions of Dr. Lamberty is apparent.

2005.  (See Tr. at 439-40, 446-51.)  The plaintiff takes issue with his testimony that the plaintiff suffers not from lymphedema and cellulitis, as various physicians have documented, but erysipelas.[10]  (See Tr. at 448-49, 451; see also id. at 104-09.)  The plaintiff claims that the distinction between the diagnoses is relevant because "[a]ccording to Dr. Chernoff, erysipelas attacks are for a[]short term duration, [and] therefore such attacks would not cause substantial disability."  (Pl.'s Br., filing 13, at 10-11.)

It is true that Dr. Chernoff testified that, in his opinion, the plaintiff's swelling was caused by erysipelas rather than lymphedema.  (See Tr. at 451.)  The ALJ, however, clearly found that the plaintiff's "medically determinable impairments" included "residual left upper extremity lymphedema."  (Tr. at 24-25 (emphasis added).)  To the extent that Dr. Chernoff opined that the plaintiff's symptoms were not attributable to lymphedema, it appears that the ALJ discredited Dr. Chernoff's testimony.

Dr. Chernoff also testified that the plaintiff's periodic infections were caused by erysipelas rather than cellulitis.  (See Tr. at 448.)  It is not clear, however, whether the ALJ credited this testimony.  Assuming, arguendo, that the ALJ improperly concluded that the plaintiff suffered from erysipelas as opposed to cellulitis, the plaintiff has not persuaded me that there is a difference between the two diagnoses that undermines the ALJ's analysis of the plaintiff's claim.  Dr. Chernoff did testify that each episode of erysipelas "is likely to be less than a week, maybe two weeks at max," and he seems to have testified that erysipelas will not satisfy the duration requirement for impairments.  (Tr. at 451.)  See also 20 C.F.R. § 416.920(a)(4)(ii); id. § 416.909.  Yet the plaintiff has not argued that the duration requirement would be satisfied if the plaintiff were diagnosed with cellulitis instead of erysipelas.  On the contrary, substantial evidence in the record would support a finding that plaintiff's bouts with infection–whether designated cellulitis or erysipelas–would not satisfy the duration requirement, and I note that on January 13, 2005, the plaintiff's treating physician opined that the plaintiff's cellulitis would not

---

[10]My medical dictionary defines "erysipelas" as "[a] specific, acute, superficial cutaneous cellulitis caused by β-hemolytic streptococci and characterized by hot, red, edematous, brawny, and sharply divided eruptions; usually accompanied by severe constitutional symptoms."  Stedman's Medical Dictionary 615 (27th ed. 2000).

14

"get her a disability."  (See Tr. at 328.)  In addition, the plaintiff directs me to no evidence that erysipelas has "shorter active intervals and a shorter disabling time" than cellulitis, (Pl.'s Br., filing 13, at 10), and there is no indication that the ALJ's assessment of the plaintiff's RFC or the VE's assessment of the plaintiff's ability to perform work would have led to a finding of disability if the plaintiff were diagnosed with cellulitis instead of erysipelas.[11]

To the extent that Dr. Chernoff testified that the plaintiff did not suffer from lymphedema, the ALJ clearly did not credit his testimony.  Furthermore, there is no basis for concluding that the ALJ credited Dr. Chernoff's testimony that the plaintiff suffered from erysipelas rather than cellulitis; there is no evidence that the plaintiff's infections–whether labeled erysipelas or cellulitis–would satisfy the duration requirement for impairments at step two of the sequential analysis; and there is no evidence that the assessment of the plaintiff's RFC or the ALJ's analysis at steps four and five would have been different if the plaintiff were deemed to suffer from cellulitis as opposed to erysipelas.  I therefore reject the plaintiff's argument that Dr. Chernoff's testimony requires a reversal of the Commissioner's decision.

      **D.**    **Whether the ALJ Failed to Consider the "Worn Out Worker" Syndrome**

The plaintiff's fourth and final argument, reproduced in its entirety, is that "[e]quitably, some consideration should have been given by the Administrative Law Judge to the Plaintiff under the category of the 'worn out worker' syndrome rule.  See F.R. 404.1562(e)."  (Pl.'s Br., filing 13, at 12.)

The "worn out worker rule" appears at 20 C.F.R. §§ 404.1562 and 416.962.  See Mitchell v. Shalala, 48 F.3d 1039, 1041 (8th Cir. 1995).  Neither section contains a subpart (e).  Section 416.962 states, in relevant part, as follows.

> (a)  If you have done only arduous unskilled physical labor.  If you have no more than a marginal education (see § 416.964) and work experience of 35 years or more during which you did only arduous unskilled physical labor, and you are not working and are no longer able to do this kind of work because of a severe impairment(s) (see §§ 416.920(c), 416.921, and 416.923), we will consider you

---

[11]Indeed, Dr. Chernoff testified that erysipelas is "a big illness" and "there's no way [the plaintiff] can work during an episode of this."  (Tr. at 449.)  The plaintiff has not directed me to evidence suggesting that cellulitis would have a more serious impact upon the plaintiff's ability to work.

>   unable to do lighter work, and therefore, disabled.
>
>   . . . .
>
>   (b)  If you are at least 55 years old, have no more than a limited education, and have no past relevant work experience.  If you have a severe, medically determinable impairment(s) (see §§ 416.920(c), 416.921, and 416.923), are of advanced age (age 55 or older, see § 416.963), have a limited education or less (see § 416.964), and have no past relevant work experience (see § 416.965), we will find you disabled.  If the evidence shows that you meet this profile, we will not need to assess your residual functional capacity or consider the rules in appendix 2 to subpart P of part 404 of this chapter.

20 C.F.R. § 416.962.  The plaintiff has not argued that she meets the criteria set forth in either of these subsections.  Indeed, the record establishes that the plaintiff completed high school and attended college for two years, which, in the absence of additional relevant evidence, precludes a finding that the plaintiff has no more than a "marginal education" or a "limited education."  See 20 C.F.R. § 416.964(b).  This, in turn, prevents the plaintiff from being found disabled under § 416.962.

I find that the Commissioner's decision is free of legal error, and it is supported by substantial evidence in the record.

**IT IS THEREFORE ORDERED** that the plaintiff's appeal is denied, and judgment will be entered in favor of the Commissioner of the Social Security Administration.

Dated April 9, 2007.

>   BY THE COURT
>
>   s/  Warren K. Urbom
>   United States Senior District Judge